IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

OSCAR GARNER,

                Plaintiff,

  v.

N/P TAPIO, B. DITTMANN, C. MARCHANT,
DR. JEANPIERRE, JANE DOE, NURSE WEINMAN,
and NURSE JENSEN,

                Defendants.

OPINION and ORDER

19-cv-144-jdp

---

      Plaintiff Oscar Garner, a pro se litigant formerly incarcerated at Waupun Correctional Institution (WCI), has filed a complaint alleging that health-care providers at WCI failed to provide him with consistent access to medication for his chronic migraine headaches. Dkt. 1. Garner seeks leave to proceed without prepayment of the filing fee, but as he acknowledges in his complaint, he has "struck out" under 28 U.S.C. § 1915(g). That means that at least three of his prior lawsuits have been dismissed as frivolous, malicious, or for failing to state a claim upon which relief may be granted. *See Garner v. Hill*, No. 17-cv-51 (E.D. Wis. filed Jan. 13, 2017); *Garner v. Kirby*, No. 14-cv-54 (W.D. Wis. filed Aug. 5, 2014); *Garner v. Huibregtse*, No. 09-cv-301 (W.D. Wis. filed May 12, 2009). Once a prisoner has "struck out," he may not bring a civil action in federal court without first prepaying the filing fee. Garner was incarcerated at the time he filed his complaint, so the three-strikes rule still applies.

      The sole exception to the three-strikes rule is if the plaintiff's pleadings show that he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). To meet this requirement, a plaintiff must allege a physical injury that is imminent or occurring at the time the complaint is filed. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003). At the time Garner filed this

complaint, he was having problems getting his migraine medications and was experiencing withdrawal-like symptoms as a result. These allegations are sufficient to meet the imminent-danger threshold.

The next step would ordinarily be for me to screen Garner's complaint under 28 U.S.C. §§ 1915 and 1915A because allegations of imminent danger require expedited review. But court records indicate that Garner was recently released from prison. This means that as of today's date, Garner is no longer in imminent danger. I will therefore revert to this court's normal procedures by ordering Garner to submit the financial information that the clerk of court needs to determine whether he qualifies for in forma pauperis status. I will direct the clerk of court to send Garner a copy of the application to proceed without prepaying fees or costs. Garner should fill out that application and return it to the court by the date specified below.

Normally I would wait until the clerk of court has received Garner's financial information to screen his complaint. But I can already see problems with Garner's allegations that, if not corrected, will prevent me from granting him leave to proceed. Specifically, many of Garner's allegations are too vague to provide fair notice of his claims as required under Federal Rule of Civil Procedure 8. So I will dismiss his complaint and give him an opportunity to file an amended complaint that fixes the problems discussed in this opinion. Once the court has received Garner's financial information and his amended complaint, I will screen the amended complaint under 28 U.S.C. §§ 1915 and 1915A.

ALLEGATIONS OF FACT

I draw the following facts from Garner's complaint, Dkt. 1. I accept his allegations as true at the screening stage. *Bonte v. U.S Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

Garner suffers from severe migraines. In his complaint, he asserts claims related to problems he has experienced in obtaining three medications he takes for his migraines: cyclobenzaprine, venlafaxine, and sumatriptan.

**A. Cyclobenzaprine**

When Garner was transferred to WCI from Wisconsin Secure Program Facility in June 2018, he received his cyclobenzaprine inconsistently. Then, in late June, his prescription for cyclobenzaprine was discontinued. It was not reinstated until July 25, after Garner was evaluated in the health service unit (HSU) clinic by defendant Tapio, a nurse practitioner. Tapio renewed Garner's prescription at that appointment, but apparently it took another two weeks for the order of cyclobenzaprine to arrive at WCI.

Garner ran out of cyclobenzaprine again in August. On August 29, he complained to the HSU manager, C. Marchant, that he had been without the medication for more than ten days. It appears that Garner received additional cyclobenzaprine a short time later.

In January 2013, Garner again complained to HSU that his cyclobenzaprine had been discontinued. It is not clear how WCI responded to his complaints, or what the status of Garner's cyclobenzaprine prescription was at the time he filed his complaint.

**B. Venlafaxine**

Meanwhile, Garner was also having problems getting venlafaxine, another headache medication. In June 2018, he complained to HSU that he was not receiving venlafaxine and that the lack of medication was triggering headaches. Tapio told Garner that venlafaxine had been ordered for him. It appears from the records attached to the complaint that HSU began dispensing venlafaxine to Garner a few days later. Garner then complained that he was not

3

receiving a high enough dosage. On June 29, Heintz, a nurse, told Garner that higher-dose venlafaxine tabs had been ordered for him.

In late July 2018, Garner complained to HSU that he had run out of venlafaxine. In response, someone from HSU told him that more venlafaxine had been ordered, and that Garner should submit medication refill slips seven days prior to running out so that he would receive medication on time in the future. It is not clear whether Garner complied with this instruction.

In September 2018, Garner complained that he had run out of venlafaxine again. In response, someone from HSU told Garner that additional venlafaxine had been ordered. It is not clear whether or when Garner started receiving the venlafaxine again.

**C. Sumatriptan**

In January 2019, Garner submitted a medical refill slip for sumatriptan, another headache medication. In response, he was told that the prescription couldn't be refilled. Later that month, Garner complained to HSU that his sumatriptan prescription had been discontinued for no reason. In response, defendant Dr. Jeanpierre indicated that she had submitted a form to the pharmacy for approval. I assume that this means that Jeanpierre took steps to reauthorize Garner's sumatriptan prescription, but it is not clear from Garner's allegations whether or when he started receiving the sumatriptan again.

ANALYSIS

Garner's complaint violates Federal Rule of Civil Procedure 8. Rule 8 requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations "must be simple, concise, and direct." Fed. R.

Civ. P. 8(d). The primary purpose of these rules is fair notice. The complaint "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Vicom, Inc. v. Harbridge Merchant Serv's, Inc.*, 20 F.3d 771, 775 (7th Cir. 1994).

Rather than presenting a narrative account of what happened, Garner's complaint simply quotes from various health service requests that he submitted and the responses he received in return. It is not clear from these requests what exactly happened with Garner's medication, let alone which defendants were responsible for the various medication mishaps and how. Garner makes clear that defendants Tapio, Marchant, Jeanpierre, Weinman, and Jensen provided responses to his various requests, but he doesn't explain what specific actions they took that violated his rights. And Garner doesn't mention defendants B. Dittman or the Jane Doe defendant at all.

I will accordingly dismiss Garner's complaint for failing to comply with Rule 8. But I will give him an opportunity to file an amended complaint that clarifies his claims. Garner should draft his amended complaint as if he were telling a story to people who know nothing about his situation. He should state (1) what each defendant knew about his medication needs and how they came to know about them; and (2) what action each defendant took that demonstrated disregard for Garner's needs. He is free to attach health services requests to his complaint, but he should not rely on them to tell his story for him.

ORDER

IT IS ORDERED that:

1. The clerk of court is directed to send Garner a copy of the application to proceed without prepaying fees or costs. Garner may have until November 5, 2019 to complete that application and return it to the court.

2. Plaintiff Oscar Garner's complaint is DISMISSED without prejudice for failing to provide fair notice of his claims. Garner may have until November 5, 2019 to file an amended complaint that addresses the problems identified in this opinion.

Entered October 15, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge